UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------x     **FOR PUBLICATION**

| | | |
|---|---|---|
| In re | : | |
| | : | |
| JMK CONSTRUCTION GROUP, LTD., | : | Chapter 11 |
| | : | Case No. 10-13968 (MG) |
| Debtor. | : | |

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | |
| JOHN VARACCHI, | : | Chapter 11 |
| | : | Case No. 10-13965 (MG) |
| Debtor. | : | |

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | |
| GEORGE DONOHUE, | : | Chapter 11 |
| | : | Case No. 10-13959 (MG) |
| Debtor. | : | |

----------------------------------------------------------------x

| | | |
|---|---|---|
| In re | : | |
| | : | |
| JACOB M. KOPF, | : | Chapter 11 |
| | : | Case No. 10-14847 (MG) |
| Debtor. | : | |

----------------------------------------------------------------x

**MEMORANDUM OPINION AND ORDER DENYING RETENTION OF: (1) PICK & ZABICKI LLP AS COUNSEL TO EACH OF THE DEBTORS; (2) EDWARD WEISSMAN, ESQ. AS SPECIAL COUNSEL TO DEBTORS JOHN VARACCHI AND GEORGE DONOHUE; AND (3) PETER A. MORALES, CPA, PC AS ACCOUNTANT TO JMK CONSTRUCTION GROUP, LTD. AND JACOB M. KOPF**

*A P P E A R A N C E S:*

PICK & ZABICKI LLP
*Proposed Counsel to JMK Construction Group, Ltd., John Varacchi, George Donohue
and Jacob M. Kopf*
369 Lexington Avenue, 12th Floor
New York, New York 10017
By:  Douglas J. Pick, Esq.
       Eric C. Zabicki, Esq.

1

TRACY HOPE DAVIS
*United States Trustee for Region 2*
33 Whitehall Street
21st Floor
New York, New York 10004
By:   Serene K. Nakano, Esq.

CATAFAGO LAW FIRM, P.C.
*Counsel to Creditor Air China, Ltd.*
The Empire State Building
350 Fifth Avenue, Suite 4810
New York, New York 10118
By:   Jacques Catafago, Esq.

SHAFFERMAN & FELDMAN LLP
*Counsel for the Official Committee of Unsecured Creditors of JMK Construction Group, Ltd.*
286 Madison Avenue, Suite 502
New York, New York 10017
By:   Joel M. Shafferman, Esq.

**MARTIN GLENN**
**United States Bankruptcy Judge**

This opinion addresses the proposed retention by multiple debtors of a single professional under section 327(a) of the Bankruptcy Code where the debtors in these four cases may hold claims for contribution against one another and some of the debtors are creditors of others. The debtor in each of four related bankruptcy proceedings, *In re JMK Construction Group, Ltd.*, *In re George Donohue*, *In re John Varacchi*, and *In re Jacob M. Kopf*, filed an application (the "P&Z Retention Applications") to retain Pick & Zabicki LLP ("P&Z") as counsel to the debtor in each case (collectively, the "Debtors"). Two of the debtors, Varacchi and Donohue, also seek to retain The Law Offices of Edward Weissman ("Weissman") as special litigation counsel pursuant to section 327(e) of the Bankruptcy Code in connection with a judgment rendered against the Debtors in a federal court action entitled *Air China Limited v. Nelson Li, et al.*, Docket No. 07-cv-11128 (LTS) (DFE) (the "Air China Case") that was the impetus for the filing of these bankruptcy petitions. Two debtors, JMK Construction Group, Ltd. ("JMK") and Kopf,

2

also filed applications for retention of Peter A. Morales, CPA, PC ("Morales") as accountant in

the JMK and Kopf bankruptcy cases pursuant to section 327(a) of the Bankruptcy Code.  The

United States Trustee (the "U.S. Trustee") opposes the retention of P&Z as counsel, Weissman

as special counsel and Morales as accountant, arguing that there are disabling conflicts of interest

that preclude representation by the professionals of more than one debtor.  Air China, Ltd. ("Air

China"), as a judgment creditor to the Debtors, opposes the retention of P&Z and Morales based

on what it perceives as P&Z's failure to disclose material facts relating to the relationships

between the Debtors, and, as a result of such relationships, ongoing irremediable conflicts of

interest.  The Court held a hearing on the applications on November 16, 2010 and took the

matters under submission.

As a result of the judgment against the Debtors in the Air China Case, the Debtors may

continue to have a right of contribution against each other under New York law.  Even though

inter-debtor claims were purportedly "waived" by a letter filed with the Court, such waiver is

both ineffective and insufficient to waive the actual conflicts of interest present here.  For the

reasons discussed below, the Court agrees with the U.S. Trustee and Air China and denies the

retention applications of P&Z, Weissman and Morales.  P&Z, Weissman and Morales may seek

retention as counsel to only one of the Debtors in their reorganization cases.

## I.    BACKGROUND

JMK, Donohue, Varacchi and Kopf each filed voluntary petitions for bankruptcy

protection after a jury returned a verdict against them in the Air China Case, tried before the

Hon. Laura Taylor Swain in the United States District Court for the Southern District of New

York (the "District Court").  JMK, Donohue and Varacchi filed voluntary petitions on July 23,

2010.  (JMK ECF # 1; Donohue ECF # 1; Varacchi ECF # 1.)  Kopf filed a voluntary petition on

September 14, 2010.  (Kopf ECF # 1.)  All parties acknowledge that it was the jury verdict in the

Air China Case that served as the primary motivation for the filing of all four bankruptcy

petitions.

### A.  The Air China Case

On July 14, 2010, a jury returned a verdict in favor of Air China against the Debtors for

fraud in the inducement, unjust enrichment and conversion.  (Objection of the United States

Trustee to the Retention Appls. of Pick & Zabicki LLP, Edward Weissman, Esq. and Peter A.

Morales, CPA, PC (the "U.S. Trustee Objection") at 3–4, Ex. A; JMK ECF # 63; Kopf ECF #

62; Donohue ECF # 66; Varacchi ECF # 59.)  The jury also awarded punitive damages against

Varacchi, Donohue and Kopf in connection with a scheme to defraud Air China and the general

public into believing that the defendants were representatives of the William B. May Real Estate

Company.  (*Id.*)  On August 10, 2010, judgment was entered in the District Court against Kopf in

the amount of $1,473,307.89 (Air China Case ECF # 201.)  On September 15, 2010, judgment

was entered against Varacchi in the amount of $70,005.95, and against Donohue in the amount

of $50,804.41.  (*Id.*; Air China Case ECF # 223.)  On October 13, 2010, this Court lifted the

automatic stay to permit the Debtors to prosecute their appeal in the Air China Case and to

permit entry of judgment against JMK.  (JMK ECF # 41; Donohue ECF # 60; Kopf ECF # 33;

Varacchi ECF # 55.)  On October 14, 2010, judgment was entered in the District Court against

JMK in the amount of $261,449.59.  (U.S. Trustee Objection at 5; Air China Case ECF # 225.)

The Debtors have appealed the judgments to the United States Court of Appeals for the Second

Circuit.  (U.S. Trustee Objection at 5.)  Air China has also cross-appealed.

### B.  The Satin Case

JMK and Kopf were among the parties sued on September 21, 2009 in the Supreme Court of the State of New York by plaintiff Adam Satin (the "Satin Case").  (U.S. Trustee Objection at 5, Ex. C.)  Satin alleges that JMK and Kopf granted him a 25% ownership interest in JMK, and seeks a declaratory judgment of Satin's ownership rights, damages for breach of fiduciary duty and unjust enrichment.  (*Id.*)  On February 5, 2010, the defendants' motion to dismiss the breach of fiduciary duty and unjust enrichment claims was denied.  (*Id.*)  According to the U.S. Trustee, JMK and Kopf have not asserted cross-claims against each other.

### C.  The Inter-Debtor Claims

The P&Z Retention Applications, accompanying affidavits in support of retention and schedules filed by certain of the Debtors indicate the existence of inter-debtor claims.  According to Kopf's schedules, JMK owes approximately $38,000 to Kopf.  (Kopf ECF # 8, Schedule B; Kopf ECF # 23 ¶ 4(e).)  JMK also owes approximately $270,000 to CMA ("CMA"), a corporation solely owned by Kopf.  (Kopf ECF # 23 ¶ 4(e).)  The indebtedness incurred by JMK is for advances and capital infusions that Kopf made to JMK, and an initial capital contribution made by CMA to start up and sustain JMK's operations.  (Aff. of Douglas J. Pick in Resp. to Objections of the United States Trustee to Debtors' Appls. For Authority to Retain Pick & Zabicki LLP as Counsel (the "Pick Response") ¶ 12; JMK ECF # 65.)  In addition, Varacchi owes Kopf $16,000 on account of a personal loan.  (Kopf ECF #23 ¶ 4(e).)  Therefore, P&Z seeks to be retained by both debtors (JMK and Varacchi) and creditors (Kopf) in these related reorganization proceedings.

In an apparent attempt to remedy any conflicts as a result of the inter-debtor claims, Kopf filed a letter with the Court purporting to irrevocably waive his right to repayment from JMK.

5

(Kopf ECF # 45; JMK ECF # 46.)  Kopf also filed a letter on behalf of CMA purporting to waive

its right to repayment by JMK.  (JMK ECF # 47.)  To date, there has been no wavier of the

$16,000 claim that Kopf has against Varacchi.

### D. The Retention Applications

#### 1. Retention of P&Z as Counsel to Each of the Debtors

P&Z filed retention applications for its retention as counsel to each of the Debtors

pursuant to section 327(a) of the Bankruptcy Code.  (JMK ECF #s 14, 21, 22, 33, 36; Kopf ECF

#s 12, 23; Donohue ECF #s 31, 33, 42; Varacchi ECF #s 23, 26, 37.)  Attached to each of the

applications is an affidavit of Douglas J. Pick in Support of Application For Authority to Retain

Pick & Zabicki LLP, *Nunc Pro Tunc*, as Counsel to the Debtor (the "Initial Pick Affidavit").

(JMK ECF # 14; Kopf ECF #12; Donohue ECF #21; Varacchi ECF # 23).  The Initial Pick

Affidavit, filed on August 19, 2010 in the JMK matter, recognized that P&Z was also seeking to

represent the other debtors in connection with their bankruptcy proceedings.[1]  (Initial Pick

Affidavit ¶ 3.)  The Initial Pick Affidavit attached to each of the P&Z Retention Applications

also states that "P&Z does not, and has not, represented any of the parties related to the Debtor,

its creditors and other parties-in-interest."  (*Id.*)  Finally, as a catch-all, Pick affirmed that

"[a]lthough P&Z has attempted to identify all such representations, it is possible that P&Z may

have represented certain of the Debtors' creditors or other entities that consider themselves

parties-in-interest in matters unrelated to this chapter 11 case."  (Initial Pick Affidavit ¶ 4.)

On August 30, 2010, Pick filed a supplemental disclosure affidavit further disclosing the

nature of the relationship between the Debtors (the "Second Pick Affidavit").  (JMK ECF # 22;

Donohue ECF # 33; Varacchi ECF # 26.)  The Second Pick Affidavit readily disclosed that JMK

---

[1]     No such disclosure was made in the retention applications filed on the same date in the Donohue or
Varacchi matters.  (*See* Donohue ECF # 31; Varacchi ECF # 23.)

has a general unsecured obligation to Jacob Kopf, a debtor in a related proceeding, in the amount of $307,833, with $270,000 being owed to CMA, an entity solely owned by Kopf, and the balance of approximately $38,000 being owed to Kopf individually.  (JMK Second Pick Affidavit ¶ 4.)  In addition, Pick disclosed that Varacchi owed Kopf (who at the time of the filing of the Second Pick Affidavit had not yet filed for bankruptcy protection) $16,000 for a personal obligation.  (Varacchi Second Pick Affidavit ¶ 4.)  Finally, Pick purports to have received a waiver from the Debtors of any conflict of P&Z's representation of JMK, Donohue and Varacchi and, to the extent applicable, Kopf.  (JMK Second Pick Affidavit ¶ 5; Donohue Second Pick Affidavit ¶ 5; Varacchi Second Pick Affidavit ¶ 5.)

On September 17, 2010, Pick filed a second supplemental affidavit further disclosing, among other things, that P&Z had conferred with other non-debtor entities that were defendants in the Air China Case (the "Second Supplemental Pick Affidavit").  (JMK ECF # 33; Varacchi ECF # 37; Donohue ECF # 42.)  The Second Supplemental Pick Affidavit acknowledged that P&Z assisted Kopf with filing his bankruptcy petition on September 14, 2010.  (Second Supplemental Pick Affidavit ¶ 2(a).)  P&Z also revealed that it had conversations with Nelson Li and WBM-JMK Development LLC ("WBMID"), both defendants in the Air China Case, about the possibility of their filing for bankruptcy protection.  (Second Supplemental Pick Affidavit ¶ 2(b), (c).)  Finally, Pick affirmed that none of the Debtors had any objection to representation of multiple parties in their reorganization cases.  (Second Supplemental Pick Affidavit ¶ 4.)  ("I have been advised that none of [the Debtors] has any objection or protest to P&Z's simultaneous representation of [JMK, WBMID and Messrs. Varacchi, Donohue, Kopf, and Li].")

2.   *Retention of Edward Weissman, Esq. as Special Counsel to Donohue and Varacchi*

P&Z filed retention applications on behalf of Donohue and Varacchi to retain Edward

Weissman, Esq. to represent them as special litigation counsel in connection with the continued

prosecution of the Air China Case before this Court under section 327(e) of the Bankruptcy

Code.  (Donohue ECF #s 22, 25; Varacchi ECF #s 17, 21.)  The basis for these applications was

Weissman's pre-petition representation of Donohue and Varacchi in the Air China Case.  (*Id.*)

According to P&Z, Weissman's knowledge and familiarity with the issues tried before the

District Court made him the ideal candidate to represent Donohue and Varacchi before this

Court.  (*Id.*)

3.   *Retention of Peter A. Morales, CPA, PC as Accountant to JMK and Kopf*

P&Z also filed a retention application on behalf of JMK and Kopf for Peter A. Morales to

serve as accountant to the debtors pursuant to section 327(a) of the Bankruptcy Code.  (JMK

ECF #s 15, 44; Kopf ECF #s 11, 43.)  P&Z submits that Morales's pre-petition representation of

JMK and Kopf makes him the best candidate to represent those parties in their reorganization

proceedings. (*Id.*)

## II.   DISCUSSION

### A.  Retention of Professionals Under Sections 327(a) and 327(e) of the Bankruptcy Code

Section 327(a) of the Bankruptcy Code governs the employment of professionals to

represent the estate during bankruptcy with court approval.  *In re Worldcom, Inc.*, 311 B.R. 151,

163 (Bankr. S.D.N.Y. 2004).  The statute reads:

> Except as otherwise provided in this section, the trustee, with the
> court's approval, may employ one or more attorneys, accountants,
> appraisers, auctioneers, or other professional persons, that do not
> hold or represent an interest adverse to the estate, and that are
> disinterested persons, to represent or assist the trustee in carrying
> out the trustee's duties under this title.

11 U.S.C. § 327(a). To be retained under section 327(a), professionals must be both disinterested and not hold or represent any interest adverse to the estate. *Vouzianas v. Ready & Pontisakos (In re Vouzianas)*, 259 F.3d 103, 107 (2d Cir. 2001) (citing *Bank Brussels Lambert v. Coan (In re AroChem Corp.)*, 176 F.3d 610, 621 (2d Cir. 1999)); *see also In re Project Orange Assocs., LLC*, 431 B.R 363, 369 (Bankr. S.D.N.Y. 2010).

The structure of the Bankruptcy Code distills these dual requirements into a single test for analysis of a conflict of interest. Bankruptcy Code § 101(14) defines disinterested persons. Under section 101(14)(C) a disinterested person is one who "does not have an interest materially adverse to the interest of the estate or of any class of creditors" for any reason. 11 U.S.C. § 101(14)(C). This definition overlaps with the adverse interest requirement of section 327(a), creating a single test for courts to employ when examining conflicts of interest. *Hogil Pharm. Corp. v. Sapir (In re Innomed Labs, LLC)*, No. 07 Civ. 4778(WCC), 2008 WL 276490, at *2 (S.D.N.Y. Jan. 29, 2008) (citing *Worldcom*, 311 B.R. at 164). A professional must not "hold or represent an interest adverse to the estate." *See AroChem*, 176 F.3d 622–23 (observing that the "adverse interest" language appears in section 327(a) and in the definitions in section 101 regarding disinterested persons and articulating the relevant test as whether an entity "holds or represent[s] an interest adverse to the estate"); *Innomed Labs*, 2008 WL 276490, at *2 (same); *see also In re Granite Partners, L.P.*, 219 B.R. 22, 33 (Bankr. S.D.N.Y. 1998) (observing that "the two prongs of section 327(a) are duplicative and form a single test to judge conflicts of interest") (internal citation omitted).

The Second Circuit has defined "hold or represent an adverse interest" as

> (1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant;

9

> or (2) to possess a predisposition under circumstances that render
> such a bias against the estate.

*AroChem*, 176 F.3d at 623 (quoting *In re Roberts*, 46 B.R. 815, 827 (Bankr. D. Utah 1985), *aff'd in part and rev'd in part on other grounds*, 75 B.R. 402 (D. Utah 1987)). The test is not retrospective; courts only examine present interests when determining whether a party has an adverse interest. *AroChem*, 176 F.2d at 623–24 (observing that Congress intended only to proscribe those who presently have an adverse interest from representing a debtor under § 327(a)). Generally stated, the adverse interest test is objective and precludes "any interest or relationship, however slight, that would even faintly color the independence and impartial attitude required by the Code and Bankruptcy Rules." *Granite Partners*, 219 B.R. at 33; s*ee also In re Angelika Films 57th, Inc.*, 227 B.R. 29, 38 (Bankr. S.D.N.Y. 1998) ("The determination of adverse interest is objective and is concerned with the appearance of impropriety.") (citation omitted). Further, courts have recognized that a professional has a disabling conflict if it has "either a meaningful incentive to act contrary to the best interests of the estate and its sundry creditors—an incentive sufficient to place those parties at more than acceptable risk—or the reasonable perception of one." *Granite Partners*, 219 B.R. at 33 (quoting *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987)). Thus, disqualification is appropriate "if it is plausible that the representation of another interest may cause the debtor's attorney to act any differently than they would without other representation." *In re Leslie Fay Cos.*, 175 B.R. 525, 533 (Bankr. S.D.N.Y. 1994).

Courts determine whether an adverse interest exists on a case-by-case basis, examining the specific facts in a case. *AroChem*, 176 F.3d at 623 ("Whether an adverse interest exists is best determined on a case-by-case basis."); *Angelika Films 57th*, 227 B.R. at 39 (stating that "the determination of counsel's disinterestedness is a fact-specific inquiry"). Bankruptcy courts may

consider the interests of the estate and the debtor's creditors, accounting for the expeditious

resolution of a case when analyzing a retention order. *Vouzianas*, 259 F.3d at 107 (citing

*AroChem*, 176 F.3d at 621). Courts, however, must take the requirements of section 327

seriously, as they ensure that a professional fulfils his duties in accordance with his fiduciary

duties to the estate. *Leslie Fay Cos.*, 175 B.R. at 532 ("The requirements of section 327 cannot

be taken lightly, for they 'serve the important policy of ensuring that all professionals appointed

pursuant to [the section] tender undivided loyalty and provide untainted advice and assistance in

furtherance of their fiduciary responsibilities.'") (quoting *Rome v. Braunstein*, 19 F.3d 54, 58

(1st Cir. 1994)). Moreover, courts lack the power to authorize the "employment of a

professional who has a conflict of interest." *In re Mercury*, 280 B.R. 35, 55 (Bankr. S.D.N.Y.

2002) (citations omitted).

The existence of claims among debtor individuals or entities is scrutinized closely as it

relates to representation of multiple parties (creditors and debtors) in reorganization proceedings.

A leading treatise notes that "[o]ne problem area that does influence courts to disqualify

attorneys or deny their requests for compensation is the potential assertion of intercompany

claims among the debtor entities." 3 COLLIER ON BANKRUPTCY ¶ 327.04[5][b] (16th ed. rev.

2010). Courts are to review the potential conflicts on a case-by-case basis in connection with

claims between debtors. *Id.* (multiple representation of debtors and/or creditors not a per se

conflict of interest); *see also In re Interwest Bus. Equip., Inc.*, 23 F.3d 311, 316 (10th Cir. 1994)

(concluding that bankruptcy court did not abuse its discretion in denying employment of single

law firm to simultaneously represent interrelated debtors where debtor-creditor relationship was

established as a result of prepetition debts "from one estate to the other").

11

Debtors may also retain attorneys for a "specified special purpose" under section 327(e) of the Bankruptcy Code. *See In re Quality Beverage Co.*, 216 B.R. 592, 594 (Bankr. S.D. Tex. 1995) (noting that "the plain language of the statute limits its application to attorneys"). Section 327(e) provides as follows:

> The trustee, with the court's approval, may employ, for a specified special purpose, other than to represent the trustee in conducting the case, an attorney that has represented the debtor, if in the best interest of the estate, and if such attorney does not represent or hold any interest adverse to the debtor or to the estate with respect to the matter on which such attorney is to be employed.

11 U.S.C. § 327(e). The requirements for retention under section 327(a) that a professional not hold or represent an interest adverse to the estate apply equally to retention under section 327(e). *See In re Homestead Cmty. at Newtown, LLC*, 390 B.R. 32, 47–48 (Bankr. D. Conn. 2008) ("[I]n applying Section 327(a) . . . [to a "special counsel" situation, courts] should reason by analogy to [Section] 327(e), so that where the trustee seeks to appoint counsel only as 'special counsel' for a specific matter, there need only be no conflict between the trustee and counsel's . . . client with respect to the specific matter itself.") (quoting *AroChem*, 176 F.3d at 622 (internal quotation marks omitted)).

## B. The Debtors' Continuing Right to Seek Contribution Precludes P&Z From Representing More Than One Debtor Under § 327(a)

P&Z endeavors to mitigate any actual conflict by disavowing the Debtors' continuing right to seek contribution from one another as a result of the judgment rendered against them in the Air China Case. (Pick Response ¶¶ 8–16.) The U.S. Trustee argues that a contribution claim under New York law may lie against any one of the Debtors at an undetermined time in the future on account of the Air China judgment. (U.S. Trustee Objection at 9–11.) Thus, P&Z would represent an adverse interest to the estates of the other Debtors in violation of section

327(a).  (*Id.*)  Air China also argued in its objection that the Debtors may have "potential claims against each other for common law contribution based on the verdict rendered against them." (Opp'n to the Appl. For Authority to Retain Pick & Zabicki LLP, *Nunc Pro Tunc*, as Counsel to the Debtor (the "Air China Objection") ¶ 17; (JMK ECF # 26; Kopf ECF # 13; Donohue ECF # 34; Varacchi ECF # 27).)  Directing the Court to the jury verdicts rendered against the individual defendants in the Air China Case, P&Z argues that "the jury had made specific findings as to the liability and damages of *each defendant* to the Air China Case, and, thus, no rights to contribution exist between and among the Debtors in connection with the specific amounts awarded against them."  (Pick Response ¶ 9.)

The U.S. Trustee also argues that JMK and Kopf would also have a right of contribution against each other in the Satin Case if a judgment is rendered against them on the claims of breach of fiduciary duty and unjust enrichment.  (U.S. Trustee Objection at 11.)  P&Z counters by averring that there is no real claim against Kopf as Satin is only seeking an entitlement to a shareholder interest in JMK with the implication that there would be no monetary damages due to Satin.  (Pick Response ¶ 11.)

A review of the New York law on contribution shows that there may be a continuing right of contribution between the Debtors in the Air China Case notwithstanding the fact that the jury apportioned damages to each defendant individually.  Further, it is not unreasonable to expect that the causes of action asserted in the Satin Case may result in damages against both JMK and Kopf, thus creating a right of contribution under New York law.  This right of contribution may "create . . . [a] potential dispute in which the estate is a rival claimant," and preclude retention of P&Z under section 327(a).  *Project Orange*, 431 B.R. at 370 (internal quotation marks omitted).

    1.  *The New York Law of Contribution Precludes Representation of More Than One Debtor by P&Z*

With regard to the right of contribution, New York law—which governs the jury verdict in the Air China Case—provides that "[a] contribution claim may be interposed when two or more parties are alleged to be liable for damages for the same injury." *See Int'l Bus. Machines Corp. v. Liberty Mut. Fire Ins. Co.*, 303 F.3d 419, 423 (2d Cir. 2002); *Santalucia v. Sebright Transp., Inc.*, 232 F.3d 293, 296 (2d Cir. 2000); N.Y. C.P.L.R. § 1401 (McKinney 2009). Section 1401 of the New York Civil Practice Law and Rules provides that "two or more persons who are subject to liability for damages for the same personal injury, injury to property or wrongful death, may claim contribution among them whether or not an action has been brought or a judgment has been rendered against the person from whom contribution is sought." N.Y. C.P.L.R. § 1401. Under New York law, "contribution is available whether or not the culpable parties are allegedly liable for the injury under the same or different theories"; and "contribution may be invoked against concurrent, successive, independent, alternative and even intentional tortfeasors." *Calcutti v. SBU, Inc.*, 273 F. Supp. 2d 488, 493 (S.D.N.Y. 2003) (citing *Steed Finance LDC v. Laser Advisers, Inc.*, 258 F. Supp. 2d 272, 283 (S.D.N.Y.2003) (internal quotation marks omitted)).

When two or more tortfeasors act concurrently or in concert to produce a single injury, they may be held jointly and severally liable. *See Sweeney, Cohn, Stahl & Vacarro v. Kane*, 773 N.Y.S.2d 420, 426 (App. Div. 2d Dep't 2004). Joint and several liability extends from the principal that "such concerted wrongdoers are considered 'joint tort-feasors' and in legal contemplation, there is a joint enterprise and a mutual agency, such that the act of one is the act of all and liability for all that is done is visited upon each." *See Cayuga Indian Nation of New York v. Pataki*, 79 F. Supp. 2d 66, 72 (N.D.N.Y. 1999) (citing *Ravo by Ravo v. Rogatnick*, 514

N.E.2d 1104 (N.Y. 1987)).  On the other hand, where two or more joint tortfeasors act

independently and cause a distinct or single harm, for which there is a reasonable basis for

division according to the contribution of each, then each is liable for damages only for his or her

own portion of the harm.  *See* RESTATEMENT (SECOND) OF TORTS § 433A (1965) ("(1) Damages

for harm are to be apportioned among two or more causes where (a) there are distinct harms, or

(b) there is a reasonable basis for determining the contribution of each cause to a single harm.

(2) Damages for any other harm cannot be apportioned among two or more causes."); *see also*

*Becker v. Poling Transp. Corp.*, 356 F.3d 381, 390–91 (2d Cir. 2004).

Courts have recognized that a jury's apportionment of fault (or, in this case, damages)

does not necessarily determine the *type* of liability (joint and several or independent and

successive), and thus does not necessarily determine the ability of the parties against whom

judgment was entered to seek contribution from other defendants.  *See Ravo*, 514 N.E.2d at

1108–09 ("[T]he jury's apportionment of fault, however, does not alter the joint and several

liability of defendants for the single indivisible injury.  Rather, that aspect of the jury's

determination of culpability merely defines the amount of contribution defendants may claim

from each other, and does not impinge upon plaintiff's right to collect the entire judgment award

from either defendant . . . ."); *see also In re September 11 Litig.*, 621 F. Supp. 2d 131, 146–47

(S.D.N.Y. 2009) (stating that "even an apportionment of fault between the tortfeasors does not

alter the joint and several liability of each defendant for the entire single indivisible injury")

(internal quotation marks omitted).

Applying these principles, the Court cannot conclude that there is no longer a right of

contribution under New York law between the Debtors.  In support of their argument that the

jury determined that the defendants were liable on an independent basis and that no joint and

several liability exists, P&Z submitted the verdict forms from the Air China Case indicating the

amount of damages Air China is entitled to recover from each defendant.  (Pick Response, Ex.

A.)  While the amount of damages awarded by the jury was determined on a defendant-by-

defendant basis, the verdict form clearly directed the jury to apportion liability between the

defendants and no judgment can be made regarding the type of liability (joint and several or

independent) ascribed to the defendants.  *See Ravo*, 514 N.E.2d at 1108 (analyzing jury

instructions and interrogatories related thereto to determine respective responsibility between

defendants for purposes of contribution).  The Court makes no judgment about the merits of an

action for contribution between the Debtors, but only notes that the apportionment of damages is

not dispositive of the Debtors' rights to seek contribution from one another.  In sum, the Court

cannot conclude that there is no longer a right of contribution between the Debtors on account of

the judgment rendered in the Air China Case.  The right of contribution between Debtors is

sufficient to disqualify P&Z from being retained pursuant to section 327(a) by more than one

debtor.[2]  *See, e.g.*, *In re Wiley Brown & Assocs. LLC*, No. 06-50886, 2006 WL 2390290, at *2–5

(Bankr. M.D.N.C. Aug. 14, 2006) (concluding that counsel could not represent debtor and

debtor's creditor where debtor had right of contribution against creditor each time that debtor

made a payment on debt to which both parties were obligated).

---

[2]      P&Z also argues that because the claims bar date in each of the Debtors' cases (except the Kopf matter) has passed without a proof of claim for contribution being filed and none of the Debtors has asserted any claim for contribution against the others, the right to seek contribution is somehow extinguished.  (Pick Response ¶ 10.) Under New York law, the right to seek contribution does not accrue until payment of the underlying claim.  *See Tetens v. Elston Realty Corp.*, 484 N.Y.S.2d 966, 967–68 (App. Div. 3d Dep't 1985) (citing *Blum v. Good Humor Corp.*, 394 N.Y.S.2d 894 (App. Div. 2d Dep't 1977)).  The right to contribution may be a contingent claim under the definition of a claim in the Bankruptcy Code, 11 U.S.C. § 101(5).  *See* 2 COLLIER ON BANKRUPTCY ¶ 101.05[1].  In light of the conclusion that P&Z may not represent more than one Debtor, it is apparent that each Debtor was represented by conflicted counsel prior to expiration of the bar dates and may not have received independent advice regarding whether they should file a proof of claim.  (U.S. Trustee Objection at 11.)  Additionally, the right to contribution is property of each estate and cannot be waived or relinquished by the Debtors without Court approval. *See* 11 U.S.C. § 363(b)(1).

In addition to the continuing right of contribution between the Debtors in the Air China Case, there may be a right of contribution between JMK and Kopf on account of the Satin Case. A review of the complaint in the Satin Case indicates that Satin is seeking compensatory and punitive money damages on his second and third causes of action, breach of fiduciary duty and unjust enrichment.  As discussed *supra*, if Satin is successful in his action and a fact-finder determines that monetary damages should be awarded, JMK and Kopf may have a right of contribution against each other.  *See* N.Y. C.P.L.R. § 1401.  JMK and Kopf would be adverse to one another, and P&Z would represent interests adverse to their estates, in violation of section 327(a).

### C.  The Inter-Debtor Claims Preclude P&Z From Representing More Than One Debtor Under § 327(a)

As further justification for denial of the P&Z Retention Application, the U.S. Trustee and Air China direct the Court to the debtor-creditor relationship that exists between JMK, Kopf and Varacchi.  (U.S. Trustee Objection at 11–13; Air China Objection ¶ 17.)  As described above, JMK owes approximately $38,000 to Kopf and $270,000 to CMA, a corporate entity solely owned by Kopf.  Varacchi also owes Kopf $16,000 for personal advances.  Simply stated, Kopf is a creditor of both JMK and Varacchi.  P&Z would have the Court look past the inter-debtor claims in favor of judicial economy and minimizing the costs to the estate.  (Pick Response ¶¶ 16–17.)  P&Z submits that representation of multiple Debtors in this case is not unlike many of the large multi-debtor reorganization cases in this district and others.  *See* 3 COLLIER ON BANKRUPTCY ¶ 327.04[5].  However, as is the case here, "[t]he potential problems inherent in multi-debtor representations become more acute when each debtor has its own creditors, different officers from other debtor entities, separate directors and, perhaps, different ownership interests as well as significant intercompany claims.  Very close, if not totally intertwined,

corporate and financial affairs also create problems." *Id.* While the Court recognizes its

obligation to examine the specific facts to determine whether an adverse interest exists, the

paramount interest of creditors, including Air China and the committee of unsecured creditors

(the "Creditors Committee") appointed in the JMK case, would be better served if more than one

law firm was retained to represent the Debtors.[3] *See Project Orange*, 431 B.R. at 370.

      *1.   P&Z May Not Represent Both Debtors and Creditors*

      The representation of both debtors and creditors may create an irremediable conflict of

interest. Other courts have likewise concluded that representation of both a debtor and a creditor

may present a disabling conflict of interest in violation of section 327(a) of the Bankruptcy Code.

*See, e.g.*, *In re Bolton-Emerson, Inc.*, 200 B.R. 725, 731 (D. Mass. 1996) ("Several courts have

flagged the potential conflict of interest which arises when counsel represent both a corporate

debtor and its officers."); *In re American Printers & Lithographers, Inc.*, 148 B.R. 862, 865–66

(Bankr. N.D. Ill. 1992) (noting that "[s]everal courts have refused to allow attorneys to represent

a debtor while simultaneously representing a principal of that debtor" even in unrelated matters)

(citing cases); 2 NORTON BANKRUPTCY LAW AND PRACTICE 3D § 30:5 (3d ed. 2010) (observing

that the "most common areas in which conflicts arise are where the professional also represents .

. . creditors of the debtor").

      In *In re Big Mac Marine, Inc.*, 326 B.R. 150, 154–55 (8th Cir. B.A.P. 2005), the Eighth

Circuit Bankruptcy Appellate Panel considered whether the bankruptcy court properly

disqualified an attorney from representing Big Mac Marine, Inc. ("Big Mac Marine") because

the same attorney had been approved to represent the debtor's principals in their pending cases.

---

[3]     Counsel to the Creditors Committee in the JMK case appeared at the hearing on the retention applications and supported the U.S. Trustee's and Air China's objections. Counsel stated that he believed this case "cried out" for independent counsel, particularly in light of the possibility of avoidance actions being filed by one debtor against another.

William Needler and Associates, Ltd. ("Needler") sought to be retained as debtor's counsel after

Big Mac Marine filed for bankruptcy protection in 2003. *Id.* at 151.  Prior to seeking approval of

its retention for Big Mac Marine, Needler was retained as counsel to Edward and Shirley

Schmidt ("the Schmidts"), who were the 100% owners of Big Mac Marine. *Id.* at 152.

According to Big Mac Marine's schedules, the Schmidts were the largest creditors in the case,

holding secured debt of $596,127.27. *Id.* at 151.  In support of the retention application, Needler

stated "to the best of his knowledge this representation did not create a conflict of interest." *Id.*

at 152.  Needler also disclosed that it represented the Schmidts in their personal bankruptcy

proceedings; and the Schmidts were the 100% shareholders of Big Mac Marine and creditors of

the debtor. *Id.*  The bankruptcy court concluded that Needler "could not represent both sets of

debtors without having conflicting allegiances." *Id.* at 153.  In light of the potential dispute

between the Schmidts and Big Mac Marine whether the Schmidts' claim was secured or

unsecured, the Bankruptcy Appellate Panel affirmed and concluded that Needler had an

irremediable conflict of interest. *Id.* at 154–55.  Needler would "have an obligation to represent

all [of Big Mac Marine's] creditors and to objectively analyze the validity of the Schmidts'

claims to secured status, or indeed to being a creditor at all" as well as the interests of Big Mac

Marine. *Id.*  Ultimately, the Bankruptcy Appellate Panel concluded that there was an actual

conflict of interest and "[m]ultiple representation in these two cases was out of the question." *Id.*

The issue of multiple representations also was considered in *Wiley Brown & Assocs.,*

*LLC*, 2006 WL 2390290, at *2–5.  The debtor, Wiley Brown & Associates, LLC ("Wiley

Brown"), filed an application to employ A. Carl Penney ("Penney") as Wiley Brown's attorney

in the bankruptcy proceedings. *Id.* at *1.  At the time the retention application was filed, Penney

also represented Cecil Dorrel Brown ("Brown") in his individual chapter 13 bankruptcy case. *Id.*

Brown listed Wiley Brown as his employer in his schedules.  *Id.*  Penney's Wiley Brown

retention application attached an affidavit indicating "he has no connection with said Debtor, the

creditors, or any other party in interest, or their respective attorneys and that he represents no

interest adverse to said Debtor, or the estate in which the matters upon which (sic) he is to be

engaged."  *Id.* at *2.  The affidavit failed to state, among other things, that Penney represented

Brown, a 50% owner of the debtor in his own chapter 13 case, Brown derived his income from

Wiley Brown, Wiley Brown was contributing $6,000 each month to Brown's individual case,

Brown and Wiley (the other owner) were co-obligors, along with Wiley Brown, on the largest

debt in both bankruptcies, or that Brown was a co-obligor with debtor on the second largest debt

in Wiley Brown's bankruptcy.  *Id.*  The bankruptcy court concluded that Penney's representation

of Brown in his individual case constituted a conflict with representation of Wiley Brown as

Brown derived his income from Wiley Brown, Brown relied on Wiley Brown's funding of his

chapter 13 case and Wiley Brown continued to pay their co-obligation under the debt owed to

their two largest creditors.  *Id.*  Thus, Penney was not permitted to simultaneously represent

Wiley Brown and its owner as it is "a conflict of interest to represent a debtor and an owner of

the debtor," nor could Penney represent Wiley Brown and its creditor as "an attorney cannot

simultaneously represent a debtor and a creditor of the estate."  *Id.* at *4–5.

The case of *In re Coal River Res., Inc.*, 321 B.R. 184, 189 (W.D. Va. 2005), is also

instructive.  In *Coal River*, four debtors owned by a single individual filed for bankruptcy and

sought retention of a single law firm, Copeland & Bieger, P.C., as legal counsel.  *Id*. at 186.  The

United States Trustee objected to the retention on the ground that "some or all of the debtors are

creditors of one another."  *Id.*  The bankruptcy court determined that Copeland & Bieger was not

qualified to represent two of the debtor entities under section 327 of the Bankruptcy Code.  On

appeal, the district court conducted a fact-intensive analysis and looked to the schedules of each

of the debtors to determine if there was a conflict of interest. *Id.* at 188–89. Because some of

the debtors indicated on their schedules that they were creditors of the other debtors and there

was intercompany indebtedness "consisting of charges for services and equipment, as well as

cash loans," the district court concluded that the evidence "support[ed] the bankruptcy court's

finding that a single attorney could not represent the interests of each debtor, and in particular the

fiduciary obligation of each debtor to its own creditors." *Id.* The district court found there to be

an actual conflict of interest. *Id.* Thus, Copeland & Bieger was disqualified from representing

certain of the debtors. *Id.*

This Court also considered a similar issue in *In re Project Orange Assocs., LLC*, 431 B.R.

363, 365 (Bankr. S.D.N.Y. 2010). The debtor sought to retain DLA Piper as general bankruptcy

counsel pursuant to section 327(a) of the Bankruptcy Code. *Id.* at 365. DLA Piper represented

certain General Electric entities ("GE") in other non-bankruptcy matters, and one of those GE

entities was the largest general unsecured creditor of the debtor. *Id.* at 367–68. After analyzing

the relationship between GE and the debtor, the Court concluded that DLA Piper could not

represent both the debtor and GE given the nature of the issues between them as they weighed on

the debtor's ability to restructure. *Id.* at 371–72. Further, the Court concluded that the conflict

waiver entered between the debtor and GE was ineffective to remedy the actual conflict under

section 327(a) of the Bankruptcy Code. *Id.* at 372–75. Ultimately, the Court concluded that

DLA Piper could not represent the debtor in light of the actual conflict arising from DLA Piper's

representation of GE in other non-bankruptcy related matters. *Id.* at 379.

In an effort to distinguish *Project Orange*, P&Z relies on the directive that a court should review whether an adverse interest exists on a case-by-case basis.[4] (Pick Response ¶¶ 16–17.) P&Z asserted that the facts of this case weigh in favor of finding that no adverse interest exists because permitting P&Z to represent both debtors and creditors could simplify administration of the estate. (*Id.*) While representation of multiple debtors may offer the advantage of keeping professional costs at a minimum, the Court finds the conflict between JMK, Kopf and Varacchi even more troublesome than the conflict that led to rejection of the retention application in *Project Orange*. Here, P&Z seeks to represent both debtors and creditors *in the same matter*; in *Project Orange*, DLA Piper's conflict arose from representing GE in unrelated non-bankruptcy matters. While there may be some cases where representation of debtors and creditors may be permissible, *see In re Global Marine, Inc.*, 108 B.R. 988, 1004 (Bankr. S.D. Tex. 1987) (holding that intercompany claims among debtors do not necessarily requires disqualification), the relationship between debtors and creditors in this case is too intertwined to permit one law firm to represent more than one debtor. Questions have arisen here about the relationship between JMK and Kopf; counsel for the JMK Creditors Committee has raised the possibility of avoidance actions being filed against Kopf. Additionally, Air China has commenced adversary proceedings against Kopf, Varacchi and Donohue seeking to deny them a discharge based on fraud. Under all of these circumstances, the Court concludes that each Debtor must be represented by independent counsel.

---

[4]    P&Z argues that, in addition to being cost-effective, it is in the best interest of the Debtors and their creditors to have P&Z retained as counsel to each Debtor for several reasons, including: (1) the bankruptcy cases were all precipitated for the same reason, namely the entry of judgments in the Air China Case; (2) Kopf and Varacchi will be submitting plans that pay all allowed claims in full, thereby presuming acceptance of the plan without a vote since there will not be any impaired class of creditors; and (3) Air China has filed an adversary proceeding asserting identical nondischarge complaints pursuant to section 523 of the Bankruptcy Code and single representation in those matters would benefit the estate. (Pick Response ¶¶ 16–17.)

The conflicts waivers offered by the Debtors in these cases to permit P&Z to represent all of the Debtors are clearly insufficient to overcome the mandatory requirements of section 327.

### 2. *Kopf's Waiver is Ineffective to Cure the Conflict*

In an apparent attempt to remedy any actual or potential conflict of interest, Kopf purported to waive his claims against JMK by letter submitted to the Court. The purported waiver was confirmed by letter dated October 20, 2010, which stated as follows: "This letter will confirm my irrevocable waiver of repayment of the amounts listed as owed to me by JMK Construction Group Ltd. in its bankruptcy schedules." (Kopf ECF # 45; JMK ECF # 46.)

Courts have recognized that conflicts waivers are not effective for purposes of satisfying the "adverse interest" requirement of section 327(a) of the Bankruptcy Code. *See, e.g.*, *Project Orange*, 431 B.R. at 374–75 (stating that a conflicts waiver "cannot trump the requirements of section 327(a)"); *In re Git-N-Go, Inc.*, 321 B.R. 54, 57–60 (Bankr. N.D. Okla. 2004); *Granite Partners*, 219 B.R. at 34 (observing that while clients may in some instances waive conflicts, "the mandatory provisions of section 327(a) do not allow for waiver"); *In re Perry*, 194 B.R. 875, 880 (E.D. Cal. 1996) (stating that "section 327(a) has a strict requirement of disinterestedness and absence of representation of an adverse interest which trumps the rules of professional conduct"). In *Git-N-Go*, 321 B.R. at 57–60, the bankruptcy court was asked to consider the retention application of a law firm seeking to be retained by the debtor under section 327(a) of the Bankruptcy Code. In the retention application, proposed counsel disclosed that it represented a holding company which owned approximately 87% of the debtor's stock and had common officers and directors with the debtor. *Id.* at 57. The representation of the holding company related to a prepetition financing transaction where the debtor guaranteed the incurrence of debt by the holding company. *Id.* To remedy the potential conflicts stemming

from the multiple representations, the law firm received conflicts waivers from the debtor and the holding company.  *Id.* at 60.  The court recognized that the debtor received the waiver to conform to rules of professional responsibility, but found the waivers insufficient to waive the adverse interests between debtors and creditors in bankruptcy.  *Id.*

The purported waiver by Kopf of his claims against JMK is not sufficient to satisfy the requirements of section 327(a) of the Bankruptcy Code.  As this Court held in *Project Orange*, a waiver of conflicts by one party does not trump the requirement that a professional not represent an interest adverse to the estate.

What Kopf has attempted here is arguably more repugnant than a simple conflicts waiver: after commencing separate bankruptcy cases, creating an estate in each case consisting of "all legal or equitable interests of the debtor in property as of the commencement of the case," 11 U.S.C. § 541(a)(1), Kopf purported to waive his right to recover the debt from JMK, but the debt from JMK is property of the estate in Kopf's individual chapter 11 case.  Kopf clearly disposed of property "other than in the ordinary course of business," something that cannot be done without court approval.[5]  *See* 11 U.S.C. § 363(b)(1).  The purported waivers are ineffective as a waiver of property of the estates and insufficient to waive the actual conflict in representing the multiple debtors in these cases.

### D.  Mr. Morales Cannot Be Retained as Accountant to Both JMK and Mr. Kopf

For the same reasons discussed above, Morales cannot be retained by both JMK and Kopf.  JMK and Kopf each seek to retain Peter Morales as their accountant pursuant to section 327(a) of the Bankruptcy Code.  To be retained by the estate, Morales must not represent an

---

[5]     Kopf and JMK belatedly filed a motion to approve the waiver of the debt as a settlement under Federal Rule of Bankruptcy Procedure 9019.  (*See* JMK ECF # 71.)  P&Z represented both sides in documenting the proposed settlement.  A hearing on the Rule 9019 motion is scheduled for December 21, 2010.  In light of the rejection of the retention of P&Z, the Court will not consider approving a settlement in which P&Z represented multiple debtors.

interest adverse to the estate.  11 U.S.C. § 327(a).  As noted above, Kopf is a creditor of JMK in the amount of approximately $310,000; waiver of these debts by letter to the Court is not effective for purposes of retention.  Accordingly, Morales may not be retained by both JMK and Kopf.

### E.  Mr. Weissman Cannot Be Retained as Special Counsel to Both Donohue and Varacchi

Donohue and Varacchi have each filed applications to retain Mr. Weissman as special litigation counsel to represent their interests in connection with the Air China Case before this Court.[6]  As demonstrated above, the New York contribution law may still apply, and Varacchi and Donohue may still have their right to assert contribution claims against each other in connection with the judgments rendered against them in the Air China Case.  Therefore, Weissman's retention by more than one debtor would have Weissman represent interests adverse to the estate in violation of section 327(a) of the Bankruptcy Code.

---

[6]    Kopf has separately retained Duane Morris LLP as his special counsel in the Air China Case.  (Kopf ECF # 57.)  As of the date hereof, JMK has not retained special counsel.

### III.    CONCLUSION

Due to the possibility that the Debtors may still have a state law right to contribution against each other and the existence of inter-debtor claims, P&Z may not be retained by more than one debtor as general bankruptcy counsel in their reorganization proceedings.  For the same reasons, Weissman and Morales may not represent more than one debtor.  This Opinion, however, does not preclude the professionals from seeking retention by only one debtor.  Thus, the P&Z Retention Applications and the retention applications for Weissman and Morales are **DENIED**.

**IT IS SO ORDERED.**

DATED:        December 9, 2010
              New York, New York


                            _____/s/Martin Glenn_____
                                  MARTIN GLENN
                            United States Bankruptcy Judge